CASE NO. 24-CI-_____

JOHN ASKIN
6420 Marina Drive
Prospect, Kentucky 40059

ABBEY DONDANVILLE
6422 Marina Drive
Prospect, Kentucky 40059

JEFFERSON CIRCUIT COURT
DIVISION _____
JUDGE_____

PLAINTIFFS

## VERIFIED COMPLAINT

THE HARBOR AT HARRORDS CREEK, INC.

    Serve: Beth Holt c/o Mulloy Properties – Via Certified Mail
        Registered Process Agent
        9000 Wessex Place, Sute 203
        Louisville, Kentucky 40222

MULLOY PROPERTIES, LLC

    Serve: Beth Holt – Via Certified Mail
        Registered Process Agent
        9000 Wessex Place, Sute 203
        Louisville, Kentucky 40222

MENGEL EXTERIOR SYSTEMS, LLC

    Serve: Arthur Mengel – Via Certified Mail
        Registered Process Agent
        9547 Highway 42
        P.O. Box 121
        Prospect, Kentucky 40059

NANCY TURNER. 5611 Harrods Cove, Prospect, Kentucky 40059

ERIE INSURANCE COMPANY

    Serve: S&H Lexington, LLC – Via Certified Mail
        Registered Process Agent
        250 W. Main St., Suite 2300
        Lexington, KY 40507-1758

DEFENDANTS

*******



Come the Plaintiffs, John Askin and Rebecca Abbey Dondanville, by and through counsel, and for their claims and causes of action against the Defendants herein, state as follows:

## PARTIES AND JURISDICTION

1.  Plaintiff, John Askin ("Askin") is and was at all times relevant herein, a resident of Jefferson County, Kentucky, with an address of 6420 Marina Drive, Prospect, Kentucky 40059.

2.  Plaintiff, Rebecca Abbey Dondanville ("Dondanville") is and was at all times relevant herein, a resident of Jefferson County, Kentucky, with an address of 6422 Marina Drive, Prospect, Kentucky 40059.

3.  Defendant, The Harbor at Harrods Creek, Inc. (hereinafter "THHC") is and was at all times relevant herein, a Kentucky corporation duly organized and authorized to do business under the laws of the Commonwealth of Kentucky, with its principal address listed as 9000 Wessex Place, Suite 203, Louisville, Kentucky 40222.

4.  Defendant, Mulloy Properties LLC ("Mulloy") is and was at all times relevant herein, a Kentucky limited liability company duly organized and authorized to do business under the laws of the Commonwealth of Kentucky, with a principal address at 9000 Wessex Place, Suite 203, Louisville, Kentucky 40222.

5.  Defendant, Mengel Exterior Systems, LLC ("Mengel") is and was at all times relevant herein, a Kentucky Limited Liability Company duly organized and authorized to do business under the laws of the Commonwealth of Kentucky, with its principal office address of 9547 US Highway 42, P.O. Box 121, Prospect, Kentucky 40059.

6.  Defendant, Nancy Turner, ("Turner") is and was at all times relevant herein, a

resident of Jefferson County, Kentucky, with an address of 5611 Harrods Cove, Prospect, Kentucky 40059.  She is and was at all times relevant herein, the President of the THHC Board of Directors.

7.   Defendant, Erie Insurance Company ("Erie"), is an insurance company domiciled in the State of Pennsylvania, which, is and was at all times relevant herein, authorized to do business in Kentucky.

8.   All acts complained of herein occurred in Jefferson County, Kentucky and the damages are in excess of the jurisdictional limits of this Court.

## UNDERLYING FACTS COMMON TO ALL CLAIMS

9.   All above allegations are realleged and reasserted as if set forth again in full.

10.  THHC is the duly formed condominium association with duties to manage certain condominiums located at The Harbor at Harrods Creek in Prospect, Kentucky (the "Condominiums"), and abide by the Master Deed and Bylaws and rules and regulations of the Condominiums. Plaintiffs each own a condominium unit at THHC – the "Askin Condominium" and "Dondanville Condominium" respectively.

11.  Mulloy has been retained by THHC as its authorized agent and property manager to assist in the management of the Condominiums in accordance with the Master Deed and Bylaws and rules and regulations of the Condominiums.

12.  Several months prior to March 1, 2023, THHC and Mulloy retained Mengel to perform certain exterior siding work on the Condominiums. That work continued into March 2023.

13.  On information and belief, Mengel lacked appropriate certification, insurance

coverage, licenses, and qualifications to perform the exterior work on the Condominiums for which it was retained.

14.    On information and belief, Turner, THHC and Mulloy failed to perform customary and appropriate due diligence with respect to retaining Mengel to perform exterior work at the condominiums and were otherwise negligent in the selection and retention of Mengel.

15.    Mengel negligently performed the work at the Condominiums which it was retained to performed.    Its work was materially defective, failed to conform with appropriate industry standards, or otherwise failed to conform to the requirements of its contract.

16.    As a direct and proximate result of the negligent and defective work of Mengel, certain chimney caps were altered, left unsealed, or otherwise inappropriately finished, fitted and sealed, causing water to infiltrate several condominiums in THHC, including the Askin Condominium and the Dondanville Condominium.

17.    The water infiltration into the Askin and Dondanville condominiums caused extensive damage, resulted in mold growth in both units, and resulted in structural concerns and/or problems.

18.    The structural damage and mold issues in the Askin and Dondanville Condominiums are the direct and proximate result of the negligent, grossly negligent, and defective work done by Mengel -- after having been negligently retained by THHC, Turner and Mulloy.

19.    Under the Master Deed and Bylaws of the Condominiums, the roof and perimeter walls are common elements of the Condominiums and thus THHC and Mulloy, as

THHC's manager and agent, are responsible for their upkeep and maintenance.

20.     Defendants, THHC and Mulloy, had a duty to promptly inspect, repair and remediate the Askin and Dondanville Condominiums.    Defendants have failed to satisfy those duties.

21.     On information and belief, Defendants, THHC and Mulloy, retained Eclipse Roofing and Restoration to review and assess Mengel's work at the Condominiums. Further, on information and belief, Eclipse has issued and delivered to Defendants a written report describing many material deficiencies in Mengel's work. Such report was requested from Turner at a THHC Board meeting but has not been produced.

22.     Defendant, Turner, pursuant to KRS 381.9170(1), had an obligation to discharge her duties as President of the Board (a) in good faith; (b) on an informed basis; and (c) in a manner she honestly believed to be in the best interest of the Condominiums. Those obligations applied to (a) retaining Mengel to perform siding work in common areas; (b) investigating damages to the Condominiums caused by Mengel's faulty and defective work; (c) reporting accurate, timely and complete information to Plaintiffs and other unit owners and responding to the health concerns caused by Mengel's faulty and defective work; and (d) promptly and completely investigating, repairing and remediating the toxic, hazardous and otherwise deleterious effects the water infiltration and mold resultant of Megel's work.

23.     THHC conducts regular meetings of its Board of Directors, of which Turner is President.    The meetings are open to all owners of condominiums at THHC.    At

those meetings, Turner, and other representatives of THHC, have made characterizations, statements, and representations about Plaintiffs, the damages to their condominiums, their claims and potential claims, and the facts underlying their claims, which are derogatory, materially false, deceptive, and misleading, and which have subjected Plaintiffs to scorn and ridicule from other condominium owners at THHC.

24.    The delays and obstructions of Defendants in properly responding to the Plaintiffs' claims have exacerbated the Plaintiffs' losses and damages.

## FACTS RELATING TO ASKIN CLAIMS

25.    All above allegations are realleged and reasserted as if set forth again in full.

26.    Askin was required to undertake early retirement from BB&T Bank due to multiple orthopedic injuries he suffered between 1983-87 as an offensive left tackle collegiate lineman at Notre Dame University.

27.    Following his retirement from BB&T Bank, Askin was eventually diagnosed in 2018 with CTE of the brain resulting from multiple concussions he experienced in collegiate football.  That diagnosis is incurable and Askin is, presently under extensive and intensive care from local and national neurologists – that mandate (among other medical recuperative requirements) the use of a breathing apparatus and a medically and environmentally safe residential housing.

28.    On or about November 18, 2022, Askin purchased a certain condominium in THHC located at 6420 Marina Drive, Prospect, Kentucky 40059.

29.    On or about March 30, 2023, Askin first noticed water intrusion into the first-floor sunroom and the second-floor master bathroom of the Askin Condominium.

Upon inspection, there appeared to be significant damage done to the chimney caps and siding because of faulty construction, upkeep or repair that had been undertaken by the Defendants.

30.  On April 1, 2023, Askin reported this damage to Turner (in her capacity as an official representative of THHC) and Mulloy. On April 3, 2023, Turner reported to Askin that a firm hired by THHC and Mulloy would be addressing the problems. However, nothing happened for at least two months, and the problems only became worse during the delay.

31.  Askin attended the June THHC Board meeting to discuss the problems, and lack of responsive action by Defendants, but was asked to leave the meeting by Turner.

32.  During that same timeframe (i.e., June 2023), Turner, Mulloy and THHC purported to have undertaken testing and an investigation of the Askin Condominium with respect to damage and mold issues which were resultant of Mengel's defective work. Following that investigation, Turner, Mulloy and THHC requested access to the Askin Condominium for Mengle to cut holes in the drywall and inspect the Askin Condominium for mold.

33.  Following that, Turner, Mulloy and THHC then negligently, intentionally and/or recklessly, misinformed Askin regarding the results of such tests, inspection and investigation -- misrepresenting to Askin that the Askin Condominium was not materially damaged by Mengel's defective work and subsequent water infiltration, that it was fully habitable, and that there was no mold found therein. Despite request therefore, no report for the June testing has been provided to Plaintiffs.

34.  Subsequently, on or about July 6, 2023, Askin had his own tests and investigation

undertaken, at his expense, by A-1 Quality Home Inspections. The A-1 report revealed the existence of mold in the Askin Condominium and showed that the mold had adversely impacted the Unit.

35.    Defendants intended that Askin rely on their misrepresentations regarding the damages to his condominium, and he did reasonably so rely, to his loss and detriment, until learning the truth as a result of his own tests and investigation.

36.    Askin provided the A-1 report to Defendants on July 19, 2023. After receiving the results of Askin's mold test, Defendants, or their agents, cut additional holes in Askin's drywall and tore up some flooring and baseboards – and in the process the existence of mold in the Askin Condominium was apparent.   They also arranged for Micro Analytics to conduct more testing on the Askin Condominium and the adjacent units. That testing concluded on July 25, 2023.

37.    Following an August 2, 2023, report from Micro Analytics (which was not produced to Plaintiffs, despite repeated request, until November 2023), Mulloy represented to Askin on August 10, 2023, that "The report from Micro Analytics has been received. There is no impact to the air quality in your unit."

38.    However, once it was later received, Askin learned the Micro Analytics report in fact said: "the air sample collected from the 1st floor living room contained slightly elevated concentrations of *Arthrinium sp.* Mold spores."   The report also discusses the observation of "discoloration," "water stains," "water damage and probable mold growth" throughout the Askin Condominium.

39.    Askin's health issues have been aggravated by the existence of mold in the Askin Condominium.

40.    As a result of the mold and structural problems, and on the advice of his doctors, Askin vacated the condominium on or about June 20, 2023, and as of the date of this filing has not resumed living in his condominium.   He has incurred substantial ongoing expenses in so doing.

41.    Without financial assistance from Defendants, Askin began the process of remediating the mold in his condominium. As a result, flooring throughout the condominium had to be removed and destroyed – and has not been repaired or replaced.

42.    As of the date of this filing, such repairs and remediation are not complete, and the Askin Condominium remains uninhabitable.

### FACTS RELATING TO DONDANVILLE CLAIMS

43.    All above allegations are realleged and reasserted as if set forth again in full.

44.    Dondanville has been awarded Bachelor of Arts, Master of Science and PhD degrees.   These academic degrees have allowed her to develop a multi-decade career in athletic training education and human athletic health.   Prior to moving to Louisville, she was a doctoral professor and Associate Dean for Health Sciences at various American universities (among them being Wingate and Marshall Universities and most recently (for 11 years) she was the full professor and Associate Dean for Health Sciences and Athletic Training Program Director at Piedmont University in Demorest, Georgia.

45.    Dondanville moved to Louisville in October 2023 to enter employment with the University of Louisville as its Accreditation Manager for the College of Education and Human Development.   During the process of her personal and career move to

Louisville, she considered purchasing the condominium unit #6422 that had been vacant since its prior owner died on December 9, 2022, and which is <u>immediately adjacent to and shares the walls of the Askin Condominium.</u> In fact, it shares the same chimney stack with the Askin Condominium – which Mengel damaged thus allowing water infiltration to the below units. She purchased her condominium on October 20, 2023.

46.     However, prior to Dondanville closing on the purchase, Defendants, Turner, THHC and Mulloy, by a written disclosure dated October 18, 2023, intentionally, negligently, and/or recklessly, misinformed Dondanville and the other parties to the transaction about THHC, the ongoing consequences of the Mengel's faulty work, and the condition of the Dondanville Condominium.

47.     Those misrepresentations include: (A) that the condo is two floors, when it is finished on all three floors; (B) that Defendants were unaware of any evacuations of the building due to its habitability (despite having been informed by Askin that he had evacuated his condominium months prior: (C) that they did not know of any deficiencies related to unit habitability in October, 2023 -- but were aware from investigations undertaken months prior that the chimney stack servicing the unit (and Askin's adjoining unit) was allowing extensive water migration into the units, that the adjoining unit (Askin's) had extensive, plainly observable mold which had not been remediated and which was expected to grow rapidly and migrate laterally until fully remediated; (D) that erroneously stated the special assessment was one time only and due July 2023, but in fact the assessment is continuing on indefinitely into the future; (E) that there are no environmental concerns (which contradicts the

mold reports they received); and (F) that incorrectly states that THHC provides no utilities or services for the monthly maintenance fee -- THHC provides water, trash, landscaping, and road maintenance.

48.     Consequently, Dondanville was not aware of the extensive damage to the Dondanville Condominium until after purchasing it.  She reasonably relied on Defendants' representations to her detriment. On October 26, 2023, Dondanville, by counsel, demanded that Defendants abate and remediate the mold in her Condominium.

49.     On information and belief, Defendants knew, or should have known, that their October 19, 2023, report was being provided consistent with the seller's disclosure obligations set forth in KRS 324.360 and would be relied upon by those receiving it.

50.     On November 1, 2023, Dondanville retained A-1 Quality Home Inspections to perform a mold test.   A-1 found that mold growth was prevalent in the Dondanville Condominium -- primarily under the hardwood floor and in all the ductwork/HVAC for which area, on information and belief, the prior testing by Micro Analytics was not done.

51.     Defendants have conducted no mold remediation for the Dondanville Condominium. Therefore Dondanville, at her own considerable cost and expense, remediated and repaired it such that it is presently believed to be habitable – but its usefulness and value remain damaged and repaired.

## COUNT I – NEGLIGENCE BY THHC, MULLOY, AND TURNER

52.     All above allegations are realleged and reasserted as if set forth again in full.

Filed                    24-Ci-000752    01/31/2024              David L. Nicholson, Jefferson Circuit Clerk

53.    Under the Master Deed and Bylaws of the condominiums, and under principles of applicable common law, Defendants, THHC, Mulloy, as THHC's manager and agent, and Turner, as President of THHC, owed duties to Askin and Dondanville to reasonably undertake measures to maintain the roof, perimeter walls, and other common elements of the Condominiums, and to promptly arrange for, and effectuate, repairs to any units which are damaged by common are work.

54.    Defendants, THHC, Mulloy and Turner, acted negligently in such regards, and as a direct and proximate result Plaintiffs, Askin and Dondanville, have been damaged in an amount within this Court's jurisdiction.

## COUNT II – INTENTIONAL MISREPRESENTATION, RECKLESSNESS AND/OR GROSS NEGLIGENCE BY THHC, MULLOY, AND TURNER

55.    All above allegations are realleged and reasserted as if set forth again in full.

56.    Under the Master Deed and Bylaws of the condominiums, and under principles of applicable common law, Defendants, THHC, Mulloy, as THHC's manager and agent, and Turner, as President of THHC, owed duties to Askin and Dondanville to accurately and promptly investigate and report to Plaintiffs their knowledge of the inhabitability of the Condominiums.

57.    As to Plaintiff Dondanville, such duties plainly applied to their October 18, 2023, report that preceded her purchase of her condominium.

58.    Defendants, THHC, Mulloy and Turner, acted with negligence, intentional deception, recklessly and/or with gross negligence in such regards, and as a direct and proximate result Plaintiffs, Askin and Dondanville, have been damaged in an amount within this Court's jurisdiction. Plaintiffs are also thereby entitled to an

Filed                    24-CI-000752    01/31/2024              David L. Nicholson, Jefferson Circuit Clerk

award of punitive damages in an amount justified by the evidence.

## COUNT III – CHARACTERIZING PLAINTIFFS IN A FALSE LIGHT BY THHC, MULLOY, AND TURNER

59.    All above allegations are realleged and reasserted as if set forth again in full.

60.    In response to damages sustained by Plaintiffs, and their resultant claims, Defendants have publicly characterized plaintiffs in a false light and in a manner which would be highly offensive to a reasonable person.

61.    On information and belief, at least some of those characterizations are evidenced by writings.

62.    Defendants had knowledge of, or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the Plaintiffs were placed.

63.    As a direct and proximate result, Plaintiffs, Askin and Dondanville, have been damaged in an amount within this Court's jurisdiction. Plaintiffs are also thereby entitled to an award of punitive damages in an amount justified by the evidence.

## COUNT IV– VIOLTION OF KRS 381.9170(1) BY TURNER

64.    All above allegations are realleged and reasserted as if set forth again in full.

65.    Defendant, Turner, willfully, wantonly and/or recklessly failed to satisfy and discharge her obligations to Plaintiffs under KRS 381.9170(1) in disregard for their rights, safety and property by (a) negligently retaining Mengel to perform siding work in common areas; (b) failing to promptly and fully investigate damages to the Condominiums caused by Mengel's faulty and defective work; (c) failing to timely, fully and accurately report and respond to the health concerns caused by Mengel's faulty and defective work; and (d) failing to promptly and

completely repair and remediate the toxic, hazardous and otherwise deleterious effects the water infiltration and mold resultant of Megel's work.

66. As a direct and proximate result, Plaintiffs, Askin and Dondanville, have been damaged in an amount within this Court's jurisdiction. Plaintiffs are also thereby entitled to an award of punitive damages in an amount justified by the evidence.

## COUNT V – BREACH OF CONTRACT BY THHC AND MULLOY

67. All above allegations are realleged and reasserted as if set forth again in full.

68. Under the Master Deed and Bylaws of the condominiums, and under principles of applicable common law, Defendants, THHC, and Mulloy, as THHC's manager and agent, owed duties to Askin and Dondanville to undertake measures to maintain the roof, perimeter walls, and other common elements of the Condominiums, and to promptly arrange for, and effectuate, repairs to any units which are damaged by common are work.

69. Askin and Dondanville are subject to monthly maintenance fees/dues payable to THHC for their condominiums and have always timely paid said fees and or dues.

70. THHC and Mulloy have breached the above duties it owes to Askin and Dondanville.

71. THHC and Mulloy also owed Askin and Dondanville the duty of good faith and fair dealing inherent in all contracts, in carrying out the terms of the Master Deed and Bylaws of the condominiums.

72. THHC and Mulloy breached said duty by its actions outlined throughout this Complaint.

73. As a direct and proximate result Plaintiffs, Askin and Dondanville, have been

damaged in an amount within this Court's jurisdiction.

## COUNT VI – BREACH OF CONTRACT, NEGLIGENCE,

## AND TRESPASS BY MENGEL

74. All above allegations are realleged and reasserted as if set forth again in full.

75. Askin and Dondanville were expected and/or intended third party beneficiaries to the contract by which Mengel was retained by Defendants THHC, Mulloy and/or Turner.

76. Mengel's work was defective and negligent, was in breach of its contract, and resulted in a trespass upon the Askin and Dondanville Condominiums.

77. As a direct and proximate result Plaintiffs, Askin and Dondanville, have been damaged in an amount within this Court's jurisdiction.

## COUNT VII – COMMON LAW AND STATUTORY BAD FAITH BY ERIE

78. All above allegations are realleged and reasserted as if set forth again in full.

79. Erie is and has been contracted with by THHC as its first-party insurance carrier and is also its third-party insurance coverage provider.

80. On July 24, 2023, Askin submitted what he intended as "third-party" a claim with the Erie for the damages resulting from the mold and water intrusion caused by THHC's negligence described above. He spoke with the Claims Department for over 30 minutes and was given a Claim number (A00004953519) and provided the name of a Claim Adjuster (Greg Boggs) and his phone number.   Askin's phone records reflect that he called Boggs and left messages for him at 9:05 AM on July 26, 2023 -- on July 28, 2023; 10:34 AM and 1:31 PM on July 2, 2023 – and on August 2, 2023, at 2:30 PM.   Boggs never returned Askin's calls.

81.    Askin also left a message for Boggs after hiring a contractor to remove the ceilings in the sunroom and walls and ceiling in the master bathroom, Askin noticed what appeared to be severe and active mold damage to the rafters and studs of the Askin Condo.

82.    On August 2, 2023, at 2:20 PM, Askin called the main office of Erie again and spoke with Stephanie.  She informed Askin that someone has been 'messing around with your claim.'  She said his claim date reflected he had first called on March 4, 2023, and again on May 1, 2023.  She said Askin's complaints about "chimney caps were reflected as being turned in as 'storm damage.'  Askin informed Stephanie that this was not true, and Stephanie suggested he call her Supervisor, Chad Keith and that Mr. Keith was the 'boss' of Askin's assigned Adjuster Greg Boggs.  Askin immediately called Chad Keith on August 3, 2023, at 12:28 pm, on August 4, 2023, at 2:14 pm, on August 7, 2023, at 4:52 pm and on August 10, 2023, at 2:56 pm.  Mr. Keith never called him back.

83.    On August 10, 2023, at 1:00 pm, Askin called the Claims Department of Erie, and they provided him the name of Chad Keith's boss, Mark Dzuricky (Vice-President of Claims) and his phone number. Askin called Dzuricky immediately on August 10, 2023, and left him a 13-minute detailed message).  At 1:24 pm Dzuricky returned his call and asked Askin to call him after 3:00 pm.   Askin then spoke with Dzuricky for 45 minutes.  He informed Askin that his claim "had disappeared." Askin immediately asked him for the recorded transcripts on his claim that he had submitted on July 28, 2023.   Dzuricky stated he did not know how to do that and Askin asked Dzuricky, "How does a Claim Number A0004953519 and an Adjuster

Greg Boggs 'disappear'?

84.     On August 14, 2023, at 2:32 pm Dzuricky called Askin back after receiving 'pictures' of the damage to his chimney and they spoke for 45 minutes. He informed Askin, "We do not see your claim on the July 24, 2023, claim date." Dzuricky said, "Your claim number is gone, and it appears that you called your claim on May 1, 2023, at 10:48 a.m."

85.     On August 25, 2023, Renee Kuhlman of Defendant Mulloy called Askin to advise that he had a 'new' Adjuster named, Gustavo Valencia, and she gave him Mr. Valencia's phone number. Askin immediately called Valencia 3 times and never received a return call.

86.     By letter dated September 27, 2023, Erie sent a check payable to THHC in the amount of $7,737.81 which, on information and belief, was represented by Erie as relating to a first party damage claim made by THHC relating to the consequences of Mengel's faulty work. However, those funds have not been made unconditionally available to Askin to defray his remediation and repair costs. Additionally, that amount substantially and materially underestimates the total amount of Askins's damages and claim.

87.     On October 3, 2023, Askin called Erie Claims Department again at 12:55 pm and spoke with Celeste. She provided Askin the name of Burt Hackenberg who was allegedly the 'boss over' all Claims Adjusters. Askin called him at the number provided and never received a return call. Celeste also provided Askin with a new claim number A00005247046. Askin told her he already had a claim number provided on July 24, 2023.

88.   After closing on her purchase on October 20, 2023, and learning that her condominium was damaged by water intrusion and mold, Dondanville, by counsel, submitted her claim to Turner, THHC and Mulloy by letter dated October 26, 2023.

89.   On October 31, 2023, Dondanville was informed that her claim was being submitted to Erie.

90.   On November 10, 2023, Erie representatives visited the Askin and Dondanville condominiums to inspect the extensive damage resulting from the mold growth and water intrusion.

91.   During, or shortly following, that inspection, Dondanville provided Erie with all information requested of her including, but not limited to, the mold report and receipts demonstrating her repair and remediation expenses.   After several further communications, Dondanville was informed that Erie opened a "third-party" claim for her on or before December 13, 2023.

92.   Similarly, Askin has provided Erie with all documentation and information requested of him.

93.   By letters dated January 24, 2024, Erie advised both Plaintiffs that there was no coverage for their respective third-party claims against THHC.   Copies of those letters are made exhibits 1 (for Askin) and 2 (for Dondanville) hereto.

94.   The referenced policy exclusions are not believed to exclude coverage for THHC's own negligence which has directly resulted in loss or damage to Plaintiffs.   The applicable policy has been requested, but not presently provided, however, liability coverage to Plaintiffs is believed to be reasonably clear.

95.   Erie has unjustifiably and unreasonably delayed in reviewing, adjusting and settling

Plaintiffs' respective claims, in violation of one or more provisions of the Kentucky Unfair Claims Settlement Practices Act, KRS § 304.12-230.

96.    Pursuant to Kentucky's Unfair Claims Settlement Practices Act, it is an unfair claims settlement practice if the insurer does not attempt "in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."   KRS § 304.12-230(6).

97.    In settling a claim, Erie was obligated by the above statute and also common law to deal promptly and in good faith with Plaintiffs as a third-party claimant in order to investigate, address and settle their claims. As shown by the above, it did not do so, and this Court should determine and award appropriate compensatory and punitive damages to Plaintiffs.

WHEREFORE, John Askin and Rebecca Abbey Dondanville respectfully demand as follows:

1.    Judgment against Erie, Turner, THHC, Mulloy, and Mengel, in favor of Plaintiffs, in an amount in excess of the jurisdictional limits of this Court;

2.    Compensatory damages as justified by the proof and evidence;

3.    Punitive damages;

4.    Trial by jury;

5.    Plaintiffs' costs and attorneys' fees incurred herein and recoverable according to Kentucky law;

6.    Prejudgment and post judgment interest as the prevailing statutory rates;

7.    Leave to amend the Complaint and add parties and/or claims as evidence may warrant; and

8.      Any and all other relief to which Plaintiffs may appear entitled.

Respectfully submitted,

J. Bruce Miller
J. Bruce Miller Law Group
250 Waterfront Plaza
325 West Main Street
Louisville, Kentucky 40202


*s/s Kenneth A. Bohnert*
Kenneth A. Bohnert
Conliffe, Sandmann & Sullivan
250 Waterfront Plaza
325 West Main Street
Louisville, Kentucky 40202
(502) 587-7711 - Phone
(502) 587-7756 – Fax
kbohnert@cssattorneys.com

## VERIFICATIONS

John Askin, after being duly sworn, states that he has read the foregoing Verified Complaint, and that, to the best of his information and belief, all the statements it contains pertaining to my claim are true.

_____
John Askin

COMMONWEALTH OF KENTUCKY)
                                               ) SS:
COUNTY OF JEFFERSON          )

Subscribed and sworn to by John Askin, known to me, on this _26_ day of January 2024.

My commission expires: _September 23, 2025_

_____
NOTARY PUBLIC, STATE AT LARGE

ID: _KYNP34070_


Rebecca Abbey Dondanville, after being duly sworn, states that she has read the foregoing Verified Complaint, and that, to the best of her information and belief, all the statements it contains pertaining to my claim are true.

_____
Rebecca Abbey Dondanville

COMMONWEALTH OF KENTUCKY)
                                               ) SS:
COUNTY OF JEFFERSON          )

Subscribed and sworn to by Rebecca Abbey Dondanville, known to me, on this _26_ day of January 2024.

My commission expires: _September 23, 2025_

_____
NOTARY PUBLIC, STATE AT LARGE

ID: _KYNP34070_



Home Office · 100 Erie Insurance Place · Erie, Pennsylvania 16530
859.219.4900 · Toll Free 877.589.3743 · Fax 855.222.3743 · erieinsurance.com

January 24, 2024

J. Bruce Miller Law Group
325 W Main Street
Louisville, KY  40202

|       |                  |                              |
|-------|------------------|------------------------------|
| Re:   | Loss Date:       | 05/16/23                     |
|       | ERIE Claim       | # A00005247046               |
|       | ERIE Policyholder: | The Harbor At Harrods Creek Inc |
|       | Your Client:     | John Askins                  |

Dear Attorney Miller and Bohnert:

It is my understanding that you are assisting Mr. Miller on this file, while he is recovering.  I appreciate your firm's help and cooperation as we investigated the submitted liability claim regarding the claim related to the to the home of Mr. Askin located at 6420 Marina Drive in Prospect, KY.

It is our understanding, Mengel Exteriors was retained to install siding, which involved the chimney cap by the homeowners association.  There was water that entered the unit as a result of the improper repair or replacement of the chimney cap and subsequently caused mold prior to Mr. Askin's unit.  Mr. Weber has submitted a property damage claim, personal property claim, a bodily injury claim and medical payment coverage claim related to mold for Mr. Askin.  Erie Insurance has put The Harbor at Harrods Creek Inc. on notice concerning this claim.

The policy issue to The Harbor at Harrods Creek Inc. specifically excludes bodily injury and property damage and expenses related to mold.  In addition, the policy excludes property damage related to contractors or subcontractors working directly or indirectly on behalf of The Harbor at Harrods Creek Inc.

Unfortunately, as we discussed Erie Insurance will not be able to provide any coverage as a result of the claimed property damage, bodily injury or medical payments related to the mold or damages resulting from or related to work performed by contractors or sub-contractors working on behalf of The Harbor at Harrods Creek Inc.  These damages will need to be pursued with The Harbor at Harrods Creek Inc.

This letter only pertains to the third-party liability coverage and does not impact the coverage for the first party claims or prior claims being handled by the property team, those will need to be address by the adjuster handling that particular portion of the claim.

If you have any questions or concerns, please let me know.

Sincerely,

John Carpenter
Commercial Liability Specialist
859-554-0829

/JC LIT36
cc: File




**Erie Insurance®**

Home Office · 100 Erie Insurance Place · Erie, Pennsylvania 16530
859.219.4900 · Toll Free 877.589.3743 · Fax 855.222.3743 · erieinsurance.com

January 24, 2024

J. Bruce Miller Law Group
325 W Main Street
Louisville, KY 40202

|  | Re: | Loss Date: | 10/20/23 |
|---|---|---|---|
|  |  | ERIE Claim | # A00005511669 |
|  |  | ERIE Policyholder: | The Harbor At Harrods Creek Inc |
|  |  | Your Client: | Abby Dondanville |

Dear Attorney Miller and Bohnert:

It is my understanding that you are assisting Mr. Miller on this file, while he is recovering. I appreciate your firm's help and cooperation as we investigated the submitted liability claim regarding the damages to the to the home of Dr. Dondanville located at 6422 Marina Drive in Prospect, KY.

It is our understanding, Mengel Exteriors was retained to install siding, which involved the chimney cap by the homeowners association. There was water that entered the unit as a result of the improper repair or replacement of the chimney cap and subsequently caused mold prior to Dr. Dondanville purchasing the unit. Mr. Weber has submitted a property damage claim for mold and a claim for failure to disclose the mold damage in relation to the unit of Dr. Dondanville. Erie Insurance has put The Harbor at Harrods Creek Inc. on notice concerning this claim.

The policy issue to The Harbor at Harrods Creek Inc. specifically excludes bodily injury and property damage and expenses related to mold. In addition, the policy excludes property damage related to contractors or subcontractors working directly or indirectly on behalf of The Harbor at Harrods Creek Inc. Further, the claim of failure to disclose the mold prior to the sale of the unit to Dr. Dondanville, does not meet the grant of coverage according to the policy.

Unfortunately, as we discussed Erie Insurance will not be able to provide any coverage as a result of the claimed damages related to the mold, damages resulting from or related to work performed by contractors or sub-contractors or the failure to disclose the mold damage prior to the sale of the unit to the prior representative of the unit. These damages will need to be pursued with The Harbor at Harrods Creek Inc.

This letter only pertains to the third-party liability coverage and does not impact the coverage for the first party claims or prior claims being handled by the property team, those will need to be address by the adjuster handling that particular portion of the claim.

If you have any questions or concerns, please let me know.

Sincerely,

John Carpenter
Commercial Liability Specialist
859-554-0829

/JC LIT36
cc: File

EXHIBIT
2

The ERIE is Above All in SERVICE®